## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| INDIA LYNETTE EDWARDS, | ) | |
| | ) | Civil Action |
| Plaintiff, | ) | File No.: |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| LIVEOPS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

### Introduction

1.     Plaintiff India Lynette Edwards is a skilled customer service professional who was employed remotely in Atlanta, Georgia as a manager of outsourced call center services provided nationwide by Defendant Liveops, Inc. ("Liveops"), which is based in Scottsdale, Arizona. Ms. Edwards performed well and even worked unpaid overtime. But when she suffered severe symptoms of Crohn's disease that she needed leave to manage, Liveops ignored her requests for reasonable accommodation under the Americans with Disabilities Act (ADA), falsely told her she was not entitled to leave under the Family and Medical Leave Act (FMLA) because she was remote, and callously terminated her employment.

1

2.     Plaintiff asserts claims for discrimination and retaliation in violation in violation of the ADA, 42 U.S.C. § 12101 et seq., and for interference and retaliation in violation of the FMLA, 29 U.S.C. § 2611 et seq. She also asserts a claim for unpaid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA). She seeks back pay and lost economic benefits of her employment, compensatory damages for emotional pain and suffering, reinstatement or front pay in lieu thereof, liquidated damages, and her reasonable attorney's fees and costs.

## Jurisdiction and Venue

3.     Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), 42 U.S.C. § 12117(a), 29 U.S.C. § 2617(a)(2), and 29 U.S.C. § 216(b).

4.     Venue is proper in the Northern District of Georgia, as Plaintiff was at all relevant times residing in Atlanta, Georgia, the violations of her rights occurred in Atlanta, Georgia, and Plaintiff would be employed in Atlanta, Georgia but for the alleged unlawful employment actions of Defendant.

## Parties

5.     Plaintiff India Lynette Edwards was at all relevant times employed by Defendant in Atlanta, Georgia. She subjects herself to the jurisdiction of this Court.

2

6.     Defendant Liveops, Inc. is a foreign for-profit corporation organized under the laws of the State of Delaware, headquartered in Scottsdale, Arizona, and authorized to do business in the State of Georgia. Liveops may be served with process by personal service upon its registered agent, Incorporating Services, Ltd., at 900 Old Roswell Lakes Parkway, Suite #310, in Roswell, Georgia 30076.

7.     At all relevant times, Defendant has engaged in interstate commerce under the FLSA, 29 U.S.C. § 203(s).

8.     Defendant's annual gross revenue and volume of sales is in excess of $500,000 for each year in the relevant time period.

9.     Defendant is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5), and the FMLA, 29 U.S.C. §2611(4)(A)(ii)(I).

10.    While Plaintiff was employed with Defendant Liveops, Defendant had 50 or more employees within 75 miles of Plaintiff's primary worksite of Scottsdale, Arizona, which was the worksite from which her work was assigned and/or to which she reported. 29 U.S.C. § 2611(2)(B)(ii); 29 C.F.R. § 825.111(a)(2).

## Facts

11.    Defendant Liveops operates a virtual call center to its customers, which are other companies that want to outsource these services.

3

12.   The call center services offered by Liveops are provided through what it calls Independent Teleservice Agents (ITAs), who are independent contractors.

13.   Defendant Liveops manages the services provided by ITAs through Agent Result Advocates (ARAs).

14.   ARAs monitor call volume for particular businesses, manage the number of available calls ITAs can take, and support ITAs with information and guidance about the Liveops platform and customer service issues that are escalated.

15.   Ms. Edwards began working for Defendant Liveops as an Agent Result Advocate on or about July 22, 2019.

16.   Though she was employed remotely in Atlanta, Georgia, Ms. Edwards received the majority of her assignments directly and indirectly from Liveops' corporate home office in Scottsdale, Arizona.

17.   For example, she was asked to work directly with Agent Experience Director Aimee Matolka (based in Scottsdale), received assignments from the Vice President for Human Resources Terri Arnold (based in Scottsdale), and was also given instruction by CEO Greg Hanover (based in Scottsdale).

18.   Much of Ms. Edwards' other work, assigned to her by people based in Liveops' Dayton, Ohio office, was actually generated from the Scottsdale office.

19.     A few months after she began working for Liveops, Ms. Edwards began to suffer from severe symptoms of Crohn's disease, an inflammatory disease of the digestive tract which cannot be cured.

20.     Ms. Edwards disclosed her medical condition to her supervisor, Kelly Schmidt, in late October or early November of 2019.

21.     Ms. Edwards did her best to manage her medical condition, taking sick leave she had earned under Liveops' policy and seeking medical treatment in an effort to manage the symptoms of her disability.

22.     Despite the challenges posed by Ms. Edwards' disability, she performed her job well, earning compliments from Schmidt as to her communication style and progress in establishing her virtual presence in January 2020.

23.     Ms. Edwards also often worked overtime on projects, either after completing eight hours of work in a day or forty hours of work in a week.

24.     For example, on October 1, 2019, Schmidt asked Ms. Edwards to create a "Thank You" video to be posted by Agent Experience Director Aimee Matolka, and while Ms. Edwards' shift was over at 6:30 p.m., she worked into the evening past 10:00 p.m. to create and send the file to Schmidt, with whom she was in contact.

25.     On January 20, 2020, Ms. Edwards was asked to prepare the MiniNation presentation on a Saturday, which was her day off.

26.     Likewise, on June 29, 2020, and July 1, 2020, Ms. Edwards worked more than eight hours, but her supervisor submitted to payroll only eight hours.

27.     Yet, despite Ms. Edwards' hard work in the face of her disability, Schmidt began to try to sabotage Ms. Edwards, manipulating situations and falsely criticizing Ms. Edwards' performance and implying she was incompetent.

28.     Ms. Edwards continued to perform her job well, following instruction from CEO Greg Hanover.

29.     On April 10, 2020, Kami Wise, the assistant for CEO Greg Hanover, reached out to Ms. Edwards to schedule a meeting for her to present Mr. Hanover with fresh ideas.

30.     Ms. Edwards had a meeting with Mr. Hanover that went very well, and Mr. Hanover asked Ms. Edwards to "keep the good ideas coming."

31.     In June 2020, Ms. Edwards' disability worsened, and she began to feel more fatigue and more severe symptoms of her Crohn's disease.

32.     Ms. Edwards' symptoms were exacerbated by stress caused as a result of the discriminatory and retaliatory harassment and scrutiny by Schmidt.

33.     On July 6, 2020, Ms. Edwards submitted a request for a leave of absence of approximately two weeks to Liveops' human resources department.

34.     On July 9, 2020, Ms. Arnold wrote to Ms. Edwards telling her that she needed to support her request for leave with documentation from her doctor.

35.     Ms. Edwards responded to Ms. Arnold, explaining that her doctor had provided the documentation to SunLife, the insurance company which provides short-term disability insurance for Liveops employees.

36.     Ms. Arnold responded to Ms. Edwards that "there is much more to requesting leave short term disability than just sending us the SunLife forms," and telling her that she was not eligible for FMLA.

37.     On July 10, 2020, Ms. Edwards submitted a written complaint by email to CEO Greg Hanover in which she detailed the disability discrimination, failure to accommodate, and retaliation she was suffering, and asked for help.

38.     Liveops permitted Ms. Edwards sick leave through July 22, 2020, which became unpaid as of July 14, 2020.

39.     On July 13, 2020, Ms. Arnold sent Ms. Edwards an email stating that she was not eligible for FMLA because she was a remote employee.

40.     On July 21, 2021, Ms. Edwards informed Katie Svorinic, the Liveops employee handling Ms. Edwards' requests for leave, that her doctor would be faxing a note requesting that Ms. Edwards' leave be extended through August 6, 2020.

41.     Liveops permitted Ms. Edwards additional leave through August 6, 2020, and indicated that any further extension would need to be requested before the expiration of this leave.

42.     Ms. Edwards submitted a final request for extension of her leave through a note from her physician, Dr. Harvey, dated August 4, 2020.

43.     Dr. Harvey's note of August 4, 2020 explained that additional documentation regarding Ms. Edwards' diagnosis and the reason for the absence had been submitted to SunLife, and that Ms. Edwards would be able to return to work on August 31, 2020.

44.     Dr. Harvey's note of August 4, 2020 also invited Liveops to contact her with any questions and provided a telephone number.

45.     On August 6, 2020, Ms. Arnold told Ms. Edwards that the information she had provided to Liveops was insufficient to support her request for leave, and that she needed to submit diagnosis-related information from her doctor to Liveops by August 10, 2020, or she would be terminated.

46.     On August 7, 2020, Ms. Edwards met with one of her doctors, who recommended that, due to the way in which Ms. Edwards' condition had progressed, she recommended Ms. Edwards receive an injection of a particular medication.

47.     The same day, Ms. Edwards' doctor also prescribed her to receive a lab test to ensure that the medication injection was appropriate before Ms. Edwards could be scheduled for the injection.

48.     On August 9, 2020, Ms. Edwards wrote to Ms. Arnold, asking for clarification as to what Liveops believed it needed in terms of documentation, given that Ms. Edwards had informed the company she suffered from Crohn's and related symptoms and provided a doctor's note requesting additional leave time.

49.     Ms. Arnold responded, stating that Liveops received no documentation from a medical professional supporting her condition.

50.     On August 9, 2020, Ms. Edwards responded to Ms. Arnold, reminding Arnold that she suffered from Crohn's disease, identifying her symptoms including pain, fatigue, loss of appetite, and asking that Liveops contact Dr. Harvey as indicated in the letter for whatever other information was needed.

51.     Liveops never contacted Ms. Edwards' doctor.

52.     On August 10, 2020, Liveops advised Ms. Edwards that, because she did not provide additional documentation, and because she was ineligible for FMLA, she would be terminated if she did not report to work on August 11, 2020.

53.     As a result of her disability and serious health condition, Ms. Edwards was unable to report to work on August 11, 2020.

54.    The same day, Ms. Edwards received the lab test that her doctor had previously ordered.

55.    On or about August 19, 2020, Ms. Edwards was advised that she could proceed with the injection medication, which she received on August 28, 2020.

56.    Immediately upon receiving the injection medication, Ms. Edwards' symptoms began to improve dramatically, and she was less fatigued, able to eat again, and able to work again a few days later.

57.    In fact, Ms. Edwards was able to work again starting August 31, 2020.

### Administrative Proceedings

58.    Plaintiff timely filed a charge of discrimination alleging disability discrimination, including failure to provide reasonable accommodation, and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC").

59.    Plaintiff has requested that the EEOC issue her the Notice of Right to Sue on her claims under the ADA and, promptly upon receipt of the same, will seek leave to amend her Complaint or otherwise notify the Court to confirm the same, and she has complied with all other conditions precedent for the assertion of these claims under the ADA in this lawsuit.

## COUNT I

## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE ADA

60.     Plaintiff hereby incorporates by reference the allegations in paragraphs 1-57 above as if set forth fully herein.

61.     At all relevant times, Plaintiff Edwards was an individual with a "disability" as defined by the ADA, 42 U.S.C. § 12012(1), because she (a) suffered physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant Liveops as a person with such impairments.

62.     Plaintiff Edwards was at all relevant times a "qualified individual" as that term is defined by the ADA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

63.     Liveops intentionally discriminated against Plaintiff Edwards by subjecting her to adverse employment actions including, but not limited to, falsely criticizing her performance, denying her the reasonable accommodation of a leave of absence that she requested, and terminating her employment, because of her disability.

11

64.     Liveops violated Plaintiff Edwards's rights under the ADA, 42 U.S.C. § 12112 by discriminating against her because of her disability.

65.     As a direct and proximate result of Liveops's intentional discrimination, Plaintiff Edwards has suffered out-of-pocket losses and been deprived of job-related economic benefits, including wage income and other benefits, including social security, all in an amount to be established at trial.

66.     Liveops's actions have caused and will continue to cause Plaintiff Edwards to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

67.     Liveops's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff Edwards' federally protected rights, and she is therefore entitled to punitive damages.

68.     Plaintiff Edwards is entitled to be reinstated to employment by Liveops, and if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT II

### FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADA

69.     Plaintiff Edwards hereby incorporates by reference paragraphs Nos. 1 through 57 as if set forth fully herein.

70.   At all relevant times, Plaintiff Edwards was an individual with a "disability" as defined by the ADA, 42 U.S.C. § 12102(1), because she (a) suffered physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Liveops as a person with such impairments.

71.   Plaintiff Edwards was at all relevant times a "qualified individual" as that term is defined by the ADA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

72.   Liveops intentionally discriminated against Plaintiff Edwards by subjecting her to adverse employment actions including, but not limited to, failing and refusing to engage in the interactive process, failing and refusing to provide and otherwise denying her reasonable accommodation in the form of a leave of absence which she requested, and terminating her employment.

73.   By denying reasonable accommodations and terminating Plaintiff Edwards, Liveops discriminated against her because of her disabilities and violated her rights under the ADA, 42 U.S.C. § 12112(5)(A).

74.   As a direct and proximate result of Liveops's intentional discrimination, Plaintiff Edwards has suffered out-of-pocket losses and been

deprived of job-related economic benefits, including wage income and other benefits, including social security, all in an amount to be established at trial.

75.    Liveops's actions have caused and will continue to cause Plaintiff Edwards to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

76.    Liveops's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff Edwards' federally protected rights, and she is therefore entitled to punitive damages.

77.    Plaintiff Edwards is entitled to be reinstated to employment by Liveops, and if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## **COUNT III**

### **RETALIATION IN VIOLATION OF THE ADA**

78.    Plaintiff Edwards hereby incorporates paragraphs Nos. 1 through 57 as if set forth fully herein.

79.    At all relevant times, Plaintiff Edwards was an individual with a "disability" as defined by the ADA, 42 U.S.C. § 12102(1) because she (a) suffered physical impairments that substantially limited one or more major life activities, (b)

had a record of such impairments, and/or (c) was regarded by Liveops as a person with such impairments.

80.   Plaintiff Edwards was at all relevant times a "qualified individual" as that term is defined by the ADA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

81.   Plaintiff Edwards engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy her rights under the ADA, including but not limited to, requesting a reasonable accommodation in the form of a leave of absence to receive treatment for her disability, and making complaint about and opposing violations of the ADA.

82.   Liveops subjected Plaintiff Edwards to adverse employment actions including, but not limited to, falsely criticizing her performance, denying her requests for reasonable accommodation in the form of a leave of absence, and terminating her employment, because she engaged in statutorily protected activity under the ADA.

83.   Liveops's actions amount to violations of the ADA, which prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADA, 42 U.S.C. § 12203(a), and also

prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA on account of having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

84.    As a direct and proximate result of Liveops's unlawful retaliation against Plaintiff Edwards, she has suffered out-of-pocket losses and been deprived of job-related economic benefits, including wage income and other benefits, including social security, all in an amount to be established at trial.

85.    Liveops's actions have caused, continue to cause, and will cause Plaintiff Edwards to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

86.    Liveops's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff Edwards' federally protected rights, and she is therefore entitled to punitive damages.

87.    Plaintiff Edwards is entitled to be reinstated to employment by Liveops, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT IV

## INTERFERENCE IN VIOLATION OF THE FMLA

88.     Plaintiff Edwards hereby incorporates by reference paragraphs Nos. 1 through 57 as if set forth fully herein.

89.     Plaintiff Edwards was an "eligible employee" who was entitled to a total of twelve workweeks of leave because of her own serious health condition within the meaning of 29 U.S.C. § 2612(a)(1)(D).

90.     Plaintiff was eligible for FMLA leave under 29 U.S.C. § 2611(2)(A), and was not excluded under § 2611(2)(B)(ii) because, while she was employed with Defendant Liveops, Defendant had 50 or more employees within 75 miles of Plaintiff's primary worksite of Scottsdale, Arizona, which was the worksite from which her work was assigned and/or to which she reported, 29 C.F.R. § 825.111(a)(2).

91.     By denying Ms. Edwards leave under the FMLA when she gave notice of a serious health condition and requested leave under the FMLA, and by terminating her employment instead of granting her leave to which she was entitled under the FMLA, Liveops unlawfully interfered with and prevented Plaintiff Edwards from exercising the rights provided to her under the FMLA.

17

92.     The actions of Liveops in interfering with Plaintiff Edwards' right to take leave under the FMLA were committed with reckless disregard for her right to take up to twelve workweeks of leave time because of her serious health condition and in violation of 29 U.S.C. § 2612(a)(1)(D).

93.     The effect of the actions of Liveops has been to deprive Plaintiff Edwards of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits, because of the violation of her right to leave under the FMLA.

94.     Accordingly, and because of the violations of the FMLA committed by Liveops, Plaintiff Edwards is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

95.     Plaintiff Edwards also is entitled to liquidated damages for Liveops's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

96.     Plaintiff Edwards is entitled to be reinstated to employment by Liveops, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VI

### RETALIATION IN VIOLATION OF THE FMLA

97.   Plaintiff Indida hereby incorporates by reference paragraphs Nos. 1 through 57 as if set forth fully herein.

98.   Plaintiff Edwards was an "eligible employee" who was entitled to a total of twelve workweeks of leave because of her own serious health condition within the meaning of 29 U.S.C. § 2612(a)(1)(D).

99.   Plaintiff was eligible for FMLA leave under 29 U.S.C. § 2611(2)(A), and was not excluded under § 2611(2)(B)(ii) because, while she was employed with Defendant Liveops, Defendant had 50 or more employees within 75 miles of Plaintiff's primary worksite of Scottsdale, Arizona, which was the worksite from which her work was assigned and/or to which she reported, 29 C.F.R. § 825.111(a)(2).

100.   Plaintiff Edwards engaged in statutorily protected activity by giving notice to Liveops of a serious health condition and need for future FMLA leave, and requesting that leave, to which she was entitled under 29 U.S.C. § 2612(a)(1)(D).

101.   By terminating Plaintiff Edwards' employment because she exercised and attempted to exercise rights under 29 U.S.C. § 2612(a)(1)(D), and/or by considering Plaintiff Edwards' attempt to exercise rights under the FMLA as a

"motivating factor" among other reasons in the decision to terminate her employment, among other things, Liveops unlawfully retaliated against Plaintiff Edwards because of her exercise of rights under the FMLA.

102.   Liveops's actions in retaliating against Plaintiff Edwards because she exercised and attempted to exercise rights under the FMLA were committed with reckless disregard for her right to take up to twelve workweeks of leave time because of her own serious health condition in violation of 29 U.S.C. § 2612(a)(1)(D).

103.   The effect of the unlawful actions of Liveops has been to deprive Plaintiff Edwards of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits as a result of the violation of her right to leave under the FMLA.

104.   Accordingly, and because the violations of the FMLA committed by Liveops, Plaintiff Edwards is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

105.   Plaintiff Edwards also is entitled to liquidated damages for the willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

106.   Plaintiff Edwards is entitled to be reinstated to employment by Liveops, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VI

### FAILURE TO PAY OVERTIME
### IN VIOLATION OF THE FLSA

107.   Plaintiff Edwards hereby incorporates by reference paragraph Nos. 1 through 57 as if set forth fully herein.

108.   At all relevant times, Liveops was Plaintiff Edwards' employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

109.   At all relevant times, Liveops employed Plaintiff Edwards within the meaning of the FLSA.

110.   At all relevant times, and on multiple occasions, Liveops suffered and permitted Plaintiff Edwards to work more than 8 hours in a day and/or more than 40 hours in a workweek but failed to pay her appropriate overtime compensation for all such overtime hours.

111.   As a result of Liveops's willful failure to pay Plaintiff Edwards at a rate not less than one and one-half times the regular rate of pay for work performed in

excess of 8 hours per day, Liveops violated the FLSA, 29 U.S.C. § 207(a)(1) and § 215(a).

112.   Liveops's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

113.   Due to Liveops's FLSA violations, Plaintiff Edwards was damaged and is entitled to recover from Liveops compensation for unpaid overtime wages; an additional equal amount as liquidated damages; and reasonable attorney's fees and costs of this action, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray that this Court take jurisdiction of this matter, honor her demand for a jury trial, and grant the following relief against Liveops:

A.   A declaration that Liveops has violated the ADA, FMLA, and FLSA with respect to Plaintiff Edwards;

B.   An award of economic damages, including lost wages and benefits and unpaid overtime, for violations of the ADA, FMLA, and FLSA;

C.   An award of non-economic damages for pain and suffering, including emotional distress, for violations of the ADA;

D.   An award of liquidated damages for violations of the FMLA and FLSA;

E.      An award of compensatory and punitive damages for violations of the

ADA;

F.      An award of pre-judgment and post-judgment interest to Plaintiff;

G.      An award of attorney's fees and costs to Plaintiff; and

H.      Such other and further relief as this Court deems just and proper.

Respectfully submitted this 28th day of June, 2022.

**HALL & LAMPROS, LLP**

By:     */s/ Brian J. Sutherland*
        Georgia Bar No. 105408
        brian@hallandlampros.com
        Rachel Berlin Benjamin
        Georgia Bar No. 707419
        rachel@hallandlampros.com

        400 Galleria Parkway, Suite 1150
        Atlanta, GA 30339
        Telephone: (404) 876-8100
        Facsimile: (404) 876-3477

        *Counsel for Plaintiff*